UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM RODRIGUEZ,

                 Plaintiff,          Civil Action No. 16-11523
                                           Honorable Judith E. Levy
                                           Magistrate Judge David R. Grand

     v.

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [18, 23]**

Plaintiff William Rodriguez ("Rodriguez") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [18, 23], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Rodriguez is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [23] be GRANTED, Rodriguez's Motion for Summary Judgment [18] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On May 21, 2013, Rodriguez filed applications for DIB and SSI, alleging a disability

onset date of January 1, 2013.  (Tr. 152-61).  These applications were denied initially on October

4, 2013.  (Tr. 101-08).  Rodriguez then filed a timely request for an administrative hearing,

which was held on June 12, 2014, before ALJ Patrick MacLean.  (Tr. 36-70).  Rodriguez, who

was represented by attorney Erica Briggs, testified at the hearing, as did vocational expert Karen

Krull.  (*Id.*).  On September 18, 2014, the ALJ issued a written decision finding that Rodriguez is

not disabled under the Act.  (Tr. 22-31).  On February 22, 2016, the Appeals Council denied

review.  (Tr. 1-6).  Rodriguez timely filed for judicial review of the final decision on April 27,

2016.  (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability."  *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a

disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,

and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## C.    Background

### 1.    *Rodriguez's Reports and Testimony*

At the time of the administrative hearing, Rodriguez was 52 years old, and at 5'11" tall, weighed 198 pounds.  (Tr. 40, 187, 195).  He lived in a two-family flat with his long-time girlfriend and their children (one of whom is a mentally disabled adult).  (Tr. 42-44, 214).  He completed the eleventh grade in Puerto Rico but had no further education.  (Tr. 40-41, 188).  He can speak and understand very little English and testified via an interpreter at the hearing.  (Tr. 39, 186).  Previously, he worked as a baker, a general laborer, and a landscaper, but he stopped working on July 1, 2011, when his seasonal employment ended.[1]  (Tr. 187-88).

Rodriguez alleges disability primarily as a result of migraine headaches, back and neck pain, and depression.  (Tr. 187).  He testified that he has suffered several head injuries over the years, which cause ongoing headaches, memory problems, and difficulty concentrating.  (Tr. 53,

---

[1] Subsequently, Rodriguez received unemployment compensation.  (Tr. 59).

57).  Rodriguez further testified that he can walk "maybe not even half a block"; stand for 20 minutes; sit for 10-15 minutes; and lift no more than 10 pounds.  (Tr. 51-53).  He has a cane (which was not prescribed by a physician) and uses it for balance outside the house.  (Tr. 52). Rodriguez also testified that he has difficulty holding onto objects with his right (dominant) hand.  (Tr. 53).

Rodriguez is able to attend to his own personal care needs, prepare simple meals, do "some cleaning," shop for groceries with his girlfriend, and help with yard work to some extent, including sweeping and picking up leaves.  (Tr. 45-46, 215-17).  He does not drive because he does not have a car.  (Tr. 46).  He does not like "to be around a lot of people" but attends church on a regular basis.  (Tr. 47, 54).

### 2.    Medical Evidence

The Court has thoroughly reviewed Rodriguez's medical record.  In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    Vocational Expert's Testimony

Karen Krull testified as an independent vocational expert ("VE") at the administrative hearing.  (Tr. 60-68).  The ALJ asked the VE to imagine a claimant of Rodriguez's age, education, and work experience who could perform medium work, with the following additional limitations:  cannot climb ropes, ladders, or scaffolds; can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; cannot reach overhead or handle with the right upper extremity; limited to simple, routine, repetitive tasks; limited to low stress work, which is characterized by only occasional decision-making and only occasional changes in the work setting; and can have only occasional contact with co-workers and the public.  (Tr. 63).  The VE

4

testified that the hypothetical individual would not be capable of performing Rodriguez's past relevant work.  (*Id.*).  However, the VE testified that the hypothetical individual would be capable of working in the jobs of industrial cleaner (12,000 jobs nationally), kitchen helper (275,000 jobs), and hand packer (41,000 jobs).  (*Id.*).

### D.      The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Rodriguez is not disabled under the Act.  At Step One, the ALJ found that Rodriguez has not engaged in substantial gainful activity since January 1, 2013 (his alleged onset date).  (Tr. 24).  At Step Two, the ALJ found that Rodriguez has the severe impairments of cervical and lumbar spine disc disease, gastroesophageal reflux disease, degenerative joint disease, gastritis, depression, and alcohol abuse.  (Tr. 25).  At Step Three, the ALJ found that Rodriguez's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Rodriguez's residual functional capacity ("RFC"), concluding that he is capable of performing medium work, with the following additional limitations:  cannot climb ropes, ladders, or scaffolds; can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; cannot reach overhead or handle with the right upper extremity; limited to simple, routine, repetitive tasks; limited to low stress work, which is characterized by only occasional decision-making and only occasional changes in the work setting; and can have only occasional contact with co-workers and the public.  (Tr. 26).

At Step Four, the ALJ determined that Rodriguez is unable to perform any of his past relevant work.  (Tr. 29).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 30).  As a result, the ALJ concluded that Rodriguez is not disabled under the Act.  (Tr. 31).

5

### E.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

6

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

## F.     Analysis

In his motion, Rodriguez argues that the ALJ erred in:  (1) assessing his RFC; (2) evaluating his credibility; and (3) determining at Step Five that he can perform a significant number of jobs that exist in the national economy.  Each of these arguments is addressed below.

### 1.     The ALJ's RFC Finding is Supported by Substantial Evidence

As set forth above, the ALJ determined that Rodriguez has the RFC to perform medium work, with the following additional limitations:  cannot climb ropes, ladders, or scaffolds; can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; cannot reach overhead or handle with the right upper extremity; limited to simple, routine, repetitive tasks; limited to low stress work, which is characterized by only occasional decision-making and only occasional changes in the work setting; and can have only occasional contact with co-workers and the public.  (Tr. 26).  For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's RFC determination.

7

a.      *Physical RFC*

Rodriguez argues that "it is unclear how the ALJ formulated his RFC recommendation" because he "does not explain what medical evidence supports his finding."  (Doc. #18 at 13). This is incorrect.  In formulating Rodriguez's RFC, the ALJ specifically discussed relevant evidence in the record – both medical and non-medical – supporting his findings.  For example, the ALJ noted that various diagnostic findings were normal.  (Tr. 28, 334 (negative x-rays of Rodriguez's lumbar spine and right knee in September 2013), 405-06 (normal audiological study in February 2014), 407 (normal head CT scan in April 2014), 408 (normal right shoulder x-ray in February 2014), 409 (normal chest x-ray in January 2014)).  The ALJ also noted that Rodriguez's daily activities – including attending lengthy church services on a weekly basis, cleaning, driving, shopping, and walking three city blocks – showed a greater functional capacity than he alleged.  (Tr. 27, 47, 201-02, 216-19).  In addition, the ALJ noted that, in October 2013, Rodriguez was helping his son move, and in January 2014, he was being paid to do chores around his sister's home.  (Tr. 28, 350, 353, 362).  The ALJ found both of these activities inconsistent with Rodriguez's allegations of disability.  Moreover, the ALJ noted that on several occasions, Rodriguez reported to medical providers either that he was doing "OK" or that he had no physical problems.  (Tr. 28, 325 (other than a concern about his high blood pressure, "everything is going okay"), 365 ("No physical problems" in September 2013), 356 ("doing okay" in December 2013), 353 ("doing okay" in January 2014)).

The ALJ also considered the findings of the consultative examiner, Leonidas Rojas, M.D. (Tr. 335-37).  At this examination, on September 27, 2013, Rodriguez reported suffering from neck and low back pain (without numbness or tingling in his extremities), as well as headaches that "apparently subside by taking [over the counter] analgesics," right shoulder pain, and right

8

knee pain.  (Tr. 335).  Rodriguez had some difficulty standing up from a chair, getting on and off the examination table, and squatting.  (Tr. 336-37).  On examination, however, Dr. Rojas found near full range of motion in Rodriguez's back and knees, only slight back tenderness, only mildly reduced range of motion in the right shoulder, normal fine and gross manipulative ability, no edema, no motor loss, no sensory loss, only a slight limp, and no use of a walking aid.  (Tr. 336-37).  Thus, these findings also support the ALJ's RFC determination.

In the face of all of this evidence, Rodriguez appears to advance two arguments.  First, he complains that the ALJ did not base the RFC determination on any medical opinion, noting that: the ALJ rejected the opinion of his treating physician, Dr. Godoy; the consultative examiner, Dr. Rojas, "did not offer a source opinion"; and the case was reviewed initially by a single decision-maker, not a medical consultant.  (Doc. #18 at 10-11).  According to Rodriguez, "whenever an ALJ's physical RFC determination is not based on any medical opinion, but is formulated based on his own independent medical findings the Court should remand the case."  (*Id.* at 10).

This argument, however, is contrary to Sixth Circuit authority.  *See, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("the Commissioner has final responsibility for deciding an individual's RFC ... and to require the ALJ to base her RFC finding on a physician's opinion would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled") (internal quotations omitted); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC.").  In this case, where the ALJ considered the relevant medical evidence – including Rodriguez's treatment notes and statements made to his physicians – as

well as Rodriguez's activities of daily living, the Court finds that the ALJ acted squarely within his authority in determining Rodriguez's RFC.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity.") (internal quotations omitted).

Rodriguez also argues that the ALJ erred in failing to give "proper weight" to the opinion of his treating physician, Carlos Godoy, M.D.  (Doc. #18 at 14-15).  On April 29, 2014, Dr. Godoy completed a Physical RFC Questionnaire, in which he indicated that he had seen Rodriguez on a monthly basis since January 2014.  (Tr. 433-36).  Dr. Godoy opined that Rodriguez can walk only one block, sit and stand for only ten minutes at a time, sit/stand/walk for less than two hours in an eight-hour work day, and only occasionally lift less than ten pounds. (Tr. 434-35).  He further opined that Rodriguez is likely to be off task 25% or more of the time during a normal workday and is incapable of even "low stress" jobs.  (Tr. 434).  The ALJ specifically considered Dr. Godoy's opinion but did not "give [it] much weight" because Dr. Godoy had treated Rodriguez for only a few months and his opinion was "simply inconsistent with the evidence of record."  (Tr. 29).

Rodriguez cites the so-called "treating physician rule," arguing that Dr. Godoy was "the only doctor to have treated [him] over a number of months and to issue an opinion in this matter" (Doc. #18 at 14) and that it was, therefore, error for the ALJ to reject his opinion.  Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted).  While treating source opinions are

entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").  If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

      In this case, Rodriguez's contention that the ALJ erred in rejecting Dr. Godoy's opinion is without merit.  As an initial matter, the ALJ discounted Dr. Godoy's opinion because Rodriguez did not have a longstanding treatment relationship with him (Tr. 29) (having visited him, at most, four times over four months) – a fact that Rodriguez concedes (Doc. #18 at 14). *See* 20 C.F.R. §404.1527(c)(2)(i) (length of treatment relationship is a factor to consider when assessing opinion evidence).  The ALJ also concluded that Dr. Godoy's assessed limitations are "far out of proportion" to his own physical findings.  (Tr. 29)  For example, despite Dr. Godoy's opinion that Rodriguez can sit/stand/walk for less than two hours in a normal eight-hour work day and is incapable of even "low stress jobs" (Tr. 434-35), Dr. Godoy's treatment notes reflect essentially no abnormal findings or assessed limitations (Tr. 387-90, 394-95, 399-400, 402-03). In addition, the ALJ rejected Dr. Godoy's assessed limitations as out of proportion to findings by

11

"other medical sources in this case."  (Tr. 29).  This observation, too, is supported by substantial evidence.  For example, an April 2014 physical examination by Andrew Marcus, M.D. showed that Rodriguez had full motor strength and a normal gait, with decreased reflexes.  (Tr. 391). Similarly, as noted above, Dr. Rojas' examination findings were largely normal, revealing near full range of motion in Rodriguez's back and knees, normal fine and gross manipulative ability, no edema, and no motor or sensory loss.  (Tr. 336-37).  Lastly, the ALJ noted that Dr. Godoy's assessed limitations were "very inconsistent with [Rodriguez's] activities."  (Tr. 29).  As discussed above, and as the ALJ noted elsewhere in his decision, these activities included attending church weekly, preparing his own meals, cleaning, driving, shopping, helping his son move, and being paid to do chores around his sister's home.  (Tr. 27-29, 47, 201-02, 216-18). Thus, contrary to Rodriguez's argument, the ALJ gave good reasons for discounting Dr. Godoy's opinion, and those reasons are supported by substantial evidence.  As a result, the Court finds no error in the ALJ's determination of Rodriguez's physical RFC.

> b.    *Mental RFC*

Rodriguez also challenges that portion of the ALJ's RFC finding that deemed him capable of performing simple, routine, repetitive tasks; low stress work, characterized by only occasional decision-making and only occasional changes in the work setting; and only occasional contact with co-workers and the public.  (Doc. #18 at 10-18 (citing Tr. 26)).  This portion of the RFC finding is consistent with the opinion of State Agency psychologist Rose Moten, Ph.D., who opined that Rodriguez is not precluded from engaging in simple work activity.  (Tr. 26, 83-84, 97-98).

Rodriguez argues that, in formulating his mental RFC, the ALJ erred in rejecting the opinion of Sarah Scantamburlo, a physician's assistant who treated him at Southwest Counseling

Solutions.  (Doc. #18 at 15-18).  Ms. Scantamburlo completed a Mental RFC Questionnaire on

April 29, 2014, in which she opined that Rodriguez is seriously limited in many of the abilities

and aptitudes necessary for unskilled work, including sustaining an ordinary routine without

special supervision, dealing with normal work stress, getting along with co-workers, accepting

instructions from supervisors, and completing a normal workday and workweek without

interruptions from psychologically-based symptoms.  (Tr. 425-28).  Ms. Scantamburlo further

opined that Rodriguez's impairments would cause him to be absent from work more than four

days per month.  (Tr. 428).

As an initial matter, as a physician's assistant, Ms. Scantamburlo is not an "acceptable

medical source," whose medical opinion could be entitled to controlling weight under the

treating physician rule.  *See* 20 C.F.R. §404.1513(d)(1).  Rather, physician assistants are "other

sources," and, when considering the opinions of "other sources," the ALJ is advised only to

"explain the weight given to [them] or otherwise ensure that the discussion of the evidence in the

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case."  *Soc. Sec. Rul.*

*06-03p*, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Here, the ALJ did just that, explaining that he did not give much weight to Ms.

Scantamburlo's opinion because the marked limitations she assessed are inconsistent with the

objective medical evidence.  (Tr. 29).  For example, the ALJ noted that Ms. Scantamburlo's

opinion is contradicted with other findings from Southwest Counseling, which included:

> … no perceptual disturbances such as hallucinations, normal thought
> content, no psychomotor slowing, good grooming and hygiene, no suicide
> ideation, no homicide ideation, and a normal attitude behavior.  Those
> reports also reveal a normal mood, spontaneous speech, alertness, full
> orientation, a normal affect, a low average fund of information, no
> delusions, and an intact memory.

(*Id.* (citing Tr. 325-33, 347-73)).  The ALJ also discounted Ms. Scantamburlo's opinion, in part, because it was inconsistent with reports from Southwest Counseling that Rodriguez's condition was "improving," a fact that is borne out by the record.[2]  (Tr. 29, 327, 364, 370, 373).  Thus, the ALJ sufficiently explained the weight given to Ms. Scantamburlo's opinion, and, for all of these reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

2.      *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Rodriguez also argues that the ALJ's credibility analysis was deficient.  (Doc. #18 at 18-24).  Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's

_____

[2] Rodriguez asserts that "the most recent evaluations from Southwest Counseling do not indicate that [his] condition was improving and by extension do not contradict Ms. Scantamburlo."  (Doc. #18 at 17 (citing Tr. 352, 355, 358, 361)).  While Rodriguez is correct that the particular records he cites do not indicate whether his condition was "improving" – or indeed, whether it was "stable," "maintaining," or "worsening" – the fact remains that other records do so indicate, as discussed above.  Thus, there is substantial evidence supporting the ALJ's decision to discount Ms. Scantamburlo's opinion.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion.") (citation omitted).

own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  *Soc. Sec. Rul. 96-7*, 1996 WL 374186, *1 (July 2, 1996)[3]; *see also* 20 C.F.R. §404.1529.

In this case, the ALJ articulated several facts in support of his conclusion that Rodriguez was less than fully credible.  First, the ALJ noted that Rodriguez's allegations of disability were inconsistent with his daily activities.  (Tr. 27).  Specifically, as the ALJ noted, Rodriguez testified that he did not do any shopping or household cleaning; he last drove four years prior to the hearing; he could only sit for 10-15 minutes and walk half a block; and he had problems with his right upper extremity.  (Tr. 27, 45-46, 51-53).  The ALJ further noted, however, that this testimony is inconsistent with Rodriguez's previous statements and other record evidence, which showed that:  he went grocery shopping and cleaned the house for up to two hours at a time; he reported driving in July 2013; he attended weekly church services that lasted about two hours; he could walk three blocks; and he did not report any problem using his hands.  (Tr. 27, 200-02, 216-19).  The ALJ also noted that Rodriguez's allegations of disability were inconsistent with his reports that he helped his son move and was paid to do chores around his sister's house.  (Tr. 28).

Rodriguez challenges the ALJ's evaluation of his daily activities, asserting that the ALJ focused on "marginal inconsistencies" that were "inconsequential."  (Doc. #18 at 20-22).  But, the fact remains that the ALJ appropriately considered numerous substantive inconsistencies between Rodriguez's hearing testimony and his previous reports, and Rodriguez's attempts to minimize or re-characterize these inconsistencies are not persuasive.  *See, e.g., Walters*, 127 F.3d

---

[3] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy.  However, the ALJ's decision in this case was made prior to the effective date of SSR 16-3p and, accordingly, the ALJ followed SSR 96-7p, the policy statement in effect at the time of his decision.

at 531-32 (ALJ is entitled to compare claimant's testimony to other evidence of record and discount claimant's credibility where there are contradictions).  Rodriguez also contends that the ALJ overstated his daily activities because he failed to consider "what type of physical stress" he had to endure to complete these activities.  (Doc. #18 at 22).  Again, however, this argument is unavailing because the ALJ is permitted – as a matter of law – to consider a claimant's daily activities in assessing the credibility of his subjective complaints.  *See, e.g.,* 20 C.F.R. §404.1529(c)(3)(i).

Second, in evaluating Rodriguez's allegations of disability, the ALJ also noted that the record showed he worked as a handyman after the alleged onset date.  (Tr. 27, 179, 238-39). Indeed, the ALJ observed that such a fact showed that Rodriguez "still functioned well enough to do fairly strenuous work despite all of his alleged pain, depression, and drowsiness from medication."  (Tr. 27).  Despite Rodriguez's contention that "there is no evidence in the record as to what work [he] was paid to do or if it was really as strenuous as alleged" (Doc. #18 at 21), it was entirely proper for the ALJ to conclude that Rodriguez's ability to perform work detracted from his allegations of disabling pain.[4]  *See Miller v. Comm'r of Soc. Sec.*, 2013 WL 1705026, at *2 (6th Cir. Apr. 22, 2013) (holding that the ALJ properly considered plaintiff's ability to maintain part-time employment as one relevant factor in determining whether he was disabled).

Third, the ALJ found that Rodriguez's receipt of unemployment compensation during the first half of 2013 was inconsistent with his allegations of disability since January 1, 2013, and noted that that "inconsistency detracts from his credibility."  (Tr. 27).  Although Rodriguez correctly states that his receipt of "unemployment benefits is not dispositive proof that [he] is not

---

[4] This is particularly true where Rodriguez's attorney could have questioned him in greater detail about "the hours work[ed] and type of work [he] performed" (Doc. #24 at 5-6) but chose not to do so, ostensibly because she did not believe such testimony would be beneficial to her client.

credible" (Doc. #18 at 22-23), the Sixth Circuit has recognized that "[a]pplications for unemployment and disability benefits are inherently inconsistent" and has permitted ALJs to rely on such inconsistency in evaluating a claimant's credibility. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004).[5]

Fourth, in assessing Rodriguez's credibility, the ALJ noted his failure to adhere to prescribed treatment. (Tr. 28). Specifically, the ALJ noted that, in April 2013, Rodriguez reported that he had been "given medication for his [gastroesophageal] reflux but has not been taking it yet." (Tr. 28, 331). Similarly, the ALJ noted that, in May 2013, Rodriguez reported medication compliance, but had only taken thirteen Remeron pills in four weeks. (Tr. 28, 328). Rodriguez takes issue with the ALJ's observation that he should have "taken much more medication if he was really as symptomatic as he alleged at the hearing" (Tr. 28), asserting that the ALJ failed to consider the fact that he could not afford medication. (Doc. #18 at 24). As the Commissioner points out, however, this argument is unavailing where Rodriguez *reported* medication *compliance* and *reported* that he was *given* medication that he did not take. Thus, the Court finds no error in the ALJ's consideration of Rodriguez's inconsistency with prescribed treatment in evaluating his credibility. *See* 20 C.F.R. §404.1529(c)(3)(iv)-(v) (noting use of

---

[5] Rodriguez cites to *Bates v. Colvin*, 2014 WL 7359771, at *7 (N.D. Ill. Dec. 22, 2014), in support of his argument that that the ALJ "relied too heavily on [his] unemployment application to discredit him" and, instead, should have taken into account his "social and economic condition" in assessing his credibility. (Doc. #18 at 23). Specifically, Rodriguez points out that he is a "single male, who with the help of his longtime girlfriend, takes care of an adult child with disabilities." (*Id.*). But, the ALJ noted these facts (Tr. 25), and Rodriguez's situation is distinguishable from the plaintiff in *Bates*, who was in a "desperate financial situation – single, living alone, with no children – and was doing whatever was necessary to prevent 'starving to death.'" *Bates*, 2014 WL 7359771, at *7. Moreover, contrary to Rodriguez's argument, the ALJ did not rely "heavily" on his receipt of unemployment compensation; rather, he merely considered it as one of many factors in assessing Rodriguez's credibility, which was entirely proper. *See, e.g., O'Connell v. Comm'r of Soc. Sec.*, 2015 WL 12683979, at *12-13 (E.D. Mich. Nov. 25, 2015) (upholding ALJ's conclusion that plaintiff's receipt of unemployment benefits, which required him to represent himself as able to work, bore negatively on his credibility).

medication and other treatment as a factor when evaluating credibility).

Fifth, the ALJ noted that, despite alleging side effects from medication in his hearing testimony (Tr. 50), Rodriguez routinely denied any side effects at treatment visits (Tr. 325, 328, 349-50, 353, 356, 359, 362, 365, 368, 371).  (Tr. 27-28).  Rodriguez claims that the ALJ failed to consider "that any alleged side-effects may have been outweighed by the benefits the medication provided" (Doc. #18 at 24), but that does not explain away the inconsistency noted by the ALJ. Moreover, to the extent Rodriguez is claiming that the benefits outweighed any side effects of his medications, that fact only serves to emphasize the effectiveness of the prescribed medications. *See* 20 C.F.R. §404.1529(c)(3)(iv) (noting side effects (or lack thereof) and effectiveness of medication are relevant factors when evaluating credibility).

Finally, the ALJ noted that, despite his allegations of disabling pain, Rodriguez specifically denied any physical problems in September 2013.  (Tr. 28, 365).  Rodriguez claims that the ALJ should have looked at "the purpose of the visit" at issue, saying that he visited Southwest Counseling on the date in question "for his depression, not for physical problems." (Doc. #18 at 24).  This argument is not persuasive, however, where Rodriguez *specifically denied* any physical problems at this visit (Tr. 365), despite reporting them at other visits (Tr. 349, 350, 353, 356, 359, 362, 371).  For all of these reasons, then, the Court finds no error warranting remand in the ALJ's credibility analysis.

### 3.   *Substantial Evidence Supports the ALJ's Step Five Finding*

Rodriguez also argues that the ALJ "erred in rendering his Step Five determination" (Doc. #18 at 25-26), contending the ALJ's hypothetical question to the VE was deficient in more than one respect.  Courts have recognized that an ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions.  *See Wilson*, 378 F.3d at 548.  But, in order for a vocational expert's

18

testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

In this case, Rodriguez appears to advance two arguments. First, he asserts that the ALJ omitted from the hypothetical question the fact that he was "illiterate or a Spanish speaker." (Doc. #24 at 7). Although Rodriguez concedes that he testified that he only spoke Spanish, he now claims there is "no evidence that the ALJ told the vocational expert to consider … this fact in generating the responses." (*Id.* at 6, 7). The Court is not persuaded by this argument. While the ALJ did not refer specifically to Rodriguez's language ability in posing the hypothetical question to the VE, the record as a whole reflects that his inability to speak English was known and considered. Rodriguez testified at the hearing through a Spanish language interpreter, stating that he went to school in Puerto Rico and he has "never spoken anything in English" and understands "very little." (Tr. 39-41). The VE was present for this testimony, and the ALJ explicitly asked her to factor in Rodriguez's "education, work experience and skill set" when testifying about the kinds of jobs the hypothetical individual could perform. (Tr. 63). Rodriguez's counsel was given the opportunity to cross-examine the VE and, thus, could have obtained additional detail about the language requirements of the jobs she referenced. (Tr. 68). His counsel chose not to do so, however, and thus he has waived any argument he might otherwise have regarding the VE's testimony in this respect.[6] *See, e.g., Zorn v. Comm'r of Soc.*

---

[6] Moreover, the Court notes that Rodriguez's past relevant work as a demolition crane operator and landscape laborer had Language Development requirements of 1 and 2, respectively. *See* DOT #921.663-058 and #408.687-014. The jobs identified by the VE – namely, industrial cleaner, kitchen helper, and hand packer – also have Language Development requirements of either 1 or 2. *See* DOT #381.687-018, #318.687-010, #920.587-018. Thus, there is no indication

*Sec.*, 2015 WL 5545257, at \*4 (E.D. Mich. Sept. 18, 2015) ("it was the responsibility of the Plaintiff's attorney, not the ALJ, to question the VE on their assessment" and failure to do constitutes waiver).

Rodriguez also argues, almost in passing, that if the ALJ had found him "reduced to light work," a finding of disability would have been appropriate pursuant to the Grid Rules, given his "age, illiteracy and history largely of unskilled employment." (Doc. #24 at 7; Doc. #18 at 25-26). While this might be true, the ALJ reasonably determined that Rodriguez is capable of performing work at the medium exertional level, and Rodriguez has demonstrated no error in that finding. *See, e.g., Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230 (6th Cir. 1993) (ALJ's RFC and subsequent hypothetical question posed to the VE need not include unsubstantiated complaints).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [23] be GRANTED, Rodriguez's Motion for Summary Judgment [18] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: February 21, 2017                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

---

in the record that Rodriguez's past relevant work was any less demanding in terms of the ability to communicate in English than the jobs identified by the VE.

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 21, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager